**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

———————————————————X
In re:                                         :
                                               :
First Connecticut Consulting Group, Inc., *et al*, :        Chapter 7
                                               :        Case No. 02-50852[1]
            Debtor                             :
———————————————————X
In re:                                         :
                                               :
James J. Licata,                               :        Chapter 7
                                               :        Case No. 02-51167
            Debtor                             :
———————————————————X

*Appearances:*

Timothy D. Miltenberger, Esq.                  :        For Trustee Richard M. Coan
Coan Lewendon Gulliver & Miltenberger, LLC     :
495 Orange Street                              :
New Haven CT                                   :

Ronald I. Chorches, Esq.                       :        For Trustee Ronald I. Chorches
Jonaan Kornafel, Esq.                          :
Law Office of Ronald I. Chorches, LLC          :
449 Silas Deane Highway, 2nd Fl.               :
Wethersfield, CT                               :

John Carberry, Esq.                            :        For Debtors Licata &
Cummings and Lockwood                          :        First Connecticut Consulting
6 Landmark Square                              :        Group, Inc.
Stamford, CT                                   :

Mark S. Markowitz, Esq.                        :
Deborah Piazza, Esq.                           :
Tarter Krinsky & Drogin                        :
1350 Broadway, 11th Fl.                        :
New York, NY                                   :

---

[1]  Case No. 02-50852 ("1st CT Case") and Case No. 02-51167 ("Licata Case")
are jointly administered, with 1st CT Case being the lead case.  For convenience, the
Court may refer to both cases in the singular, either as "1st CT Case" or the "Case".

| | | |
|---|---|---|
| James A. Scarpone, Esq. | : | For the Mocco Parties |
| John B. Nance, Esq. | : | |
| Scarpone & Vargo, LLC | : | |
| 50 Park Place, Ste. 1003 | : | |
| Newark, NJ | : | |
| | | |
| Joshua W. Cohen, Esq. | : | For Centrum Fin'l Servs., Inc., |
| Day Pitney LLP | : | First Mutual Bank, |
| One Audubon Street | : | U. S. Bank, Nat'l Assoc., and |
| New Haven, CT | : | Wells Fargo Bank, N.A. |

## MEMORANDUM AND ORDER
## ON TRUSTEES' AMENDED RULE 9019 MOTION

### I. Introduction

Trustees Richard M. Coan, for the estate of First Connecticut Consulting Group, Inc. ("1st CT Case"), and Ronald I. Chorches, for the estate of James J. Licata ("Licata Case"), (hereafter, collectively the "Trustees") move pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of the instant amended settlement with the "Mocco Parties".[2]  (*See* ECF No. 2464 ("Amended 9019 Motion").[3])  Under the proposed amended settlement, the Trustees will sell the remaining assets of these estates to Mocco for $1.5 million and they will no longer be parties in New Jersey state court litigation.[4]  (*See id.*).  Mocco supports the motion.  (*See* ECF No. 2335; *see also*

---

[2]  The "Mocco Parties" include Peter Mocco, and his insiders and affiliates, as that term is more fully defined in the proposed settlement agreement which is the subject of the Trustee's instant Amended 9019 Motion.  (*See* Amended 9019 Motion, Exhibit 2 at 1 (Settlement Agreement); ECF No. 2321-2).)  For convenience, the Court may refer to the Mocco Parties as "Mocco".

[3]  The Trustees' original Rule 9019 Motion is ECF No. 2321 ("Original 9019 Motion").

[4]  That litigation is styled as *Mocco, et al., v. Licata, et al.*, Consol. No. ESX-C-280-98 (lead case), and is pending before the Honorable James S. Rothschild in the Superior Court of New Jersey, Chancery Division, in Essex County.  The parties refer to that action as the "NJ Ownership Dispute" and the Court will employ that designation.

In 1998, after Licata refused to reconvey to Mocco certain real properties held in

Sept. 23, 2014 Audio File, ECF No. 2474.)  Licata, individually and, presumably as the sole member of First Connecticut Consulting Group, Inc. ("1st CT"), objects.[5]  (*See* ECF No. 2470.)  For the reasons that follow, the Amended 9019 Motion is granted.

## II.  Background

The 1st CT Case is more than 12 years old.  On July 27, 2004, Bankruptcy Judge Colleen A. Brown noted in related 1st CT cases that they are like "a complicated web", with each strand of the web containing "loops and knots woven by [Licata's and Moccos'] conduct."  *In re First Connecticut Consulting Group, Inc.*, No. Misc. 04-101,

---

limited liability companies ("LLCs"), after certain agreed-upon conditions were met, Mocco commenced the NJ Ownership Dispute.  *See Dare Investments, LLC v. Chicago Title Ins. Co.*, No. 10-6088 (DRD), 2011 WL 2600594, *2-3, Opinion (D.N.J. June 29, 2011).  In 1999, Mocco commenced another action against Licata to resolve, *inter alia*, disputes over the nature and meaning of their Joint Venture Agreement ("JVA") (Case No. ESX-C-397-99), which action was consolidated with the NJ Ownership Dispute.  In essence, the NJ Ownership Dispute involves (a) whether the bankruptcy estates or Mocco owns certain 1st CT LLCs, and (b) whether the so-called "Schedule C Properties" are part of the JVA, to which the Trustees claim an interest.  The resolution of those issues could determine whether there would be any surplus funds in Licata's bankruptcy estate.  (*See* Original 9019 Motion at 5, ¶15; *see also* Mocco's Motion for Relief from Stay at 2 (ECF No. 1462).)

[5]  There was a limited objection by a group of lenders comprising of U.S. Bank, National Association, First Mutual Bank, Wells Fargo Bank, N.A., and Centrum Financial Services, Inc. (collectively, "Lenders"), which was directed at ceratin language in the proposed order approving the Original 9019 Motion (*see* ECF No. 2333; *see also* ECF No. 2453.).  That limited objection was also raised in connection with the proposed order approving the Amended 9019 Motion.  (*See* Sept. 23, 2014 Audio File, ECF No. 2474.)  The Trustees and Mocco have agreed to reservation-of-rights language that will resolve the Lenders' limited objection.  Therefore, the Lenders' limited objection has been resolved.  *See infra* at 12.

The Court further notes that there were other responses to the Original 9019 Motion:  the support of the Internal Revenue Service, a creditor in both Cases, which was made in open court on February 28, 2014; the "Objection" of CB3 Acquisition, LLC ("CB3"), which was actually a counter-offer (*see* ECF No. 2331); a similar "Objection" by SWJ Management, LLC, ("Management"), which also contained a counter-offer (*see* ECF No. 2340).  Since the Amended 9019 Motion supercedes the Original 9019 Motion and neither CB3 nor Management have objected to the superceding motion, the Court does not need to address those objections.

2004 WL 1676211, Decision (Bankr. Vt. July 27, 2004)("1st CT Vermont Decision").[6]
These ten-plus years later, however, the web has expanded with more strands and
additional loops and knots.  The Court assumes the parties' familiarity with the history
of these Cases and provides only the background deemed necessary to provide context
to this decision.

The intangible properties (hereafter, collectively referred to as the "Assets")
which are the subject of the instant Amended 9019 Motion are:

(a) interests in the assets of the Joint Venture Agreement ("JVA") between Licata
and Mocco;[7]

(b) membership interests in various limited liability companies;[8]

---

[6]  Mocco sought the dismissal of certain related limited liability companies, *to wit*:
1st CT LLCs II, III, X, XI, and XIII.  (*See* ECF No. 154.)  By consent of the parties, an
order entered changing the venue of the dismissal motion to the District of Vermont.
(*See* ECF No. 478.)  Thereafter, Judge Brown of the Vermont Bankruptcy Court
conducted an eight-day trial in February 2004 at which both Licata and Mocco testified.
("1st CT Vermont Trial").  *See 1st CT Vermont Decision*, 2004 WL 1676211 at *2.
Based on Mocco's more credible testimony, Judge Brown found Licata was Mocco's
nominee regarding the identified LLCs and that Licata's filing chapter 11 petitions for
those LLCs was done in bad faith, and granted Mocco's motion.

[7]  In May 1997, Mocco and Licata agreed to pursue business ventures (focusing
on real estate development projects in New Jersey).  *See Dare*, 2004 WL 1676211 at
*2.  Their agreement was memorialized by a January 1998 "Joint Venture Agreement"
("JVA").  (*See* Debtors' original "Application for an Order Approving Sale of Assets",
ECF No. 595 at 7, ¶22; *see also* Trustees' Statement of Collateral at 2, ¶1, ECF No.
2366.)  Licata alleges that the JVA relates to (1) some properties owned by either Licata
or Moccoa (identified on Schedule A of the JVA), (2) certain properties that were to be
acquired (identified on Schedule B of the JVA), and (3) other properties owned by
Mocco, including Liberty Harbor, that potentially would become part of the joint venture
only if certain conditions were met (included in Schedule C of the JVA; hereafter,
"Schedule C Properties").  (*See* Original 9019 Motion at 4, ¶9; *see also* Debtors' original
"Application for an Order Approving Sale of Assets", ECF No. 595 at 7, ¶22; Mocco's
Motion for Relief from Stay at 5-7, ¶¶7, 8 (ECF No. 1462).)

[8]  The record includes numerous references to Liberty Harbor Holdings, LLC,
and Fulton's Landing Urban Renewal Co., LLC.  (*See, e.g.*, Debtors' original
"Application for an Order Approving Sale of Assets", ECF No. 595 at 7, ¶22.)

(c) interests in various 1st CT LLCs;[9]

(d) claims for fees;[10] and

(e) claims against EMP, Cynthia Licata, Mocco, Pieter de Jong, and others. (*See* Debtors' original "Application for an Order Approving Sale of Assets", ECF No. 595 at 2, ¶2 and n.1; the First Amended Asset Purchase Agreement ("FAAPA"), ECF No. 671). Despite the extensive history of these Cases, the issue before the Court is straight-forward, *i.e.*, whether the sale of the Assets proposed by the Amended 9019 Motion "fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant)*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original; further citation omitted).

The Trustees' Original 9019 Motion (*see* ECF No. 2321) proposed to sell the Assets to Mocco for $1.5 million, payable over an 18-month period. On September 5, 2014, the Trustees filed the Amended 9019 Motion. (*See* ECF No. 2464.) That proposed settlement amended the original proposal in two significant ways: it requires Mocco to assume all risk of any inconsistent ruling regarding ownership of the Assets (*i.e.*, that Management, and not the Trustees, is determined to be the owner of the Assets[11]); and upon approval of the Amended 9019 Motion, Mocco is required to immediately pay the Trustees the balance of the $1.5 settlement amount, with all payments being non-refundable. (*See id.* at 2, ¶5.). Licata, a chapter 7 debtor with no standing, *see infra* at 10-11, is the only party who objected to the Amended 9019

---

[9]  *I.e.*, First Connecticut Holding Company IV, LLC. (*See* First Amended Asset Purchase Agreement, Exh. A, ECF No. 671).

[10]  *I.e.*, mortgage origination fees. (*See* First Amended Asset Purchase Agreement, Exh. A, ECF No. 671).

[11]  Management, a non-represented chapter 11 debtor, *see* Case No. 14-50526, has appealed a July 1, 2014 order ("July 1st Order"), which included a finding that the Trustees, and not Management, are the owners of the Assets. *See In re First Connecticut Consulting Group, Inc., et al.*, No. 3:14-cv-1202 (MPS) (D. Conn Aug. 2014).

Motion.[12]  (*See* ECF No. 2470.)

At a September 23, 2014 hearing ("September Hearing") on the Amended 9019 Motion, Licata argued that the Trustees were settling with Mocco for a "mere pittance" because the real property related to certain of the Assets are worth hundreds of millions of dollars.  To substantiate that claim, Licata relied on an opinion letter of a real estate broker.  (*See* Sept. 23, 2014 Audio File, ECF No. 2474; *see also* ECF No. 2398-1.)

The Trustees challenged Licata's claim with the argument that their chances of success in the NJ Ownership Dispute are greatly diminished in light of Judge Rothschild's comment to the parties that he will give considerable weight to the evidence presented in the 1st CT Vermont Trial, in which Bankruptcy Judge Brown found Mocco to be a more credible witness than Licata and further found that, at all times, Licata was merely Mocco's nominee.  In other words, contrary to Licata's claim, he was not the owner of the properties in certain of the 1st CT LLCs.  Knowing that Mocco has already succeeded once against Licata (regarding claims to other properties in other LLCs), the Trustees believe that there is a strong probability of the same outcome in the NJ Ownership Dispute.  (*See id.*)  The Trustees also argued that Licata grossly inflated the value of the Assets since none of the three auctions to sell the Assets produced a successful result.[13]  Moreover, having reviewed the Claims

---

[12]  *See supra* note 5.

[13]      A.  The initial attempts to sell the subject "Assets"
Between June 2003 and March 2006, James Licata and 1st CT, as debtors-in-possession in the jointly administered Case, made several attempts to sell the Assets under § 363(f) to SWJ Holdings, LLC ("Holdings").  (*See* Debtors' original "Application for an Order Approving Sale of Assets", ECF No. 595; FAAPA, Exhibit A (Acquired Assets) and Exhibit A-1, ECF No. 671; *see also* Sale Order dated June 21, 2005 (ECF No. 716); Sale Order dated Oct. 12, 2005 (ECF No. 844); Sale Order dated Nov. 16, 2005 (ECF No. 866); Sale Order dated Feb. 2, 2006 (ECF No. 897).)  Ultimately, on March 9, 2006, the Court entered a fifth sale order again approving the sale of the Assets, pursuant to the FAAPA, to Holdings for an amended purchase price of $11.25 million and requiring a cash payment of $5 million at closing.  (*See* Sale Order dated Mar. 9, 2006 (ECF No. 917).)  The $5.85 million balance was secured by a March 13, 2006 promissory note collateralized by the Assets (hereafter, the "Note").  Pursuant to the terms of the Note, it was payable on December 15, 2006.  The March 9, 2006 Sale

Order was not appealed.  The closing occurred on March 13, 2006.

On June 28, 2006, the 1st CT Case and the Licata Case were converted to cases under chapter 7 and, thereafter, the Trustees were appointed.

### B.  Trustees reacquire the Assets

On December 15, 2006, Holdings defaulted by failing to pay the $5.85 million due under the Note.  As a consequence, on February 9, 2007, the Trustees commenced an adversary proceeding for, among other things, breach of contract under the FAAPA.  *See Coan et al. v. SWJ Holdings, LLC (In re First Connecticut Consulting Group, Inc.)*, Adv. Pro No. 07-5010, Complaint (ECF No. 1) (Bankr. D. Conn. Feb. 9, 2007).  After Holdings filed an answer admitting the breach, the Trustees moved for judgment on the pleadings (*see id.*, ECF No. 12), which was granted (*see id.*, ECF No. 13).  On April 30, 2007, a judgment in favor of the Trustees and against Holdings in the amount of $6,466,294.96 entered ("Judgment").  (*See id.*, Judgment, ECF No. 14.)

When Holdings did not satisfy the Judgment, the Trustees began the process of foreclosing on the Assets.  On July 12, 2007, the Trustees filed a motion in the 1st CT Case to set procedures for the disposition of the Assets, which were being sold "AS IS[,] WHERE IS" and "without recourse, warranty or guaranty whether express or implied ("Sales Procedure Motion").  (*See* Case No. 02-50852, ECF No. 1268; *see also* "Notice of Public Sale of [Assets]" (ECF No. 1268-1).)  That motion was granted, setting an auction date of September 11, 2007.  (*See id.*, ECF No. 1295).

The September 11th auction was stayed by the September 10, 2007 involuntary chapter 11 bankruptcy of Holdings.  (*See* Case No. 07-50658, ECF No. 40.)  On January 31, 2008, the Trustees were granted relief from stay to continue with the foreclosure of the Assets, to which Holdings had stipulated.  (*See id.*, ECF No. 109.)  Thereafter, the Trustees issued a "Notice of Public Sale of [Assets]" in the 1st CT Case and in Holdings' case, setting an auction date of March 19, 2008.  (*See* Case No. 02-50852, ECF No. 1384; Case No. 07-50658, ECF No. 122.)  No bidders appeared.  The Trustees credit bid $1 million of their Judgment and reacquired the Assets.

### C.  The Trustees' 2013 unsuccessful attempt to sell the Assets

On July 2, 2013, the Trustees again attempted to sell the Assets by filing a "Motion for Approval of Option and Purchase Agreement" with CB3 (*see* ECF No. 2207 ("OPA Motion", dated July 2, 2013)).  A corresponding "Notice of Sale and Opportunity for Objections Thereto" was issued July 8, 2013.  (*See* ECF No. 2211 ("July 2013 Notice").)  In the July 2013 Notice, the Trustees (i) sought approval of the sale of the Assets to CB3 for $7.7 million, (ii) solicited higher and better bids, and (iii) set a deadline for objections to the proposed sale.  The proposed sale was subject to the claims, liens of interest of all third parties, *i.e.*, "as is, where is".  A July 30, 2013 hearing date was set.

On July 26, 2013, a timely competing bid was made.  On July 30, 2013, the Trustees conducted an auction of the Assets, at the conclusion of which CB3 was named the highest bidder with a final $12.6 million bid.

Registers in the Cases and having taken into account duplicative claims, the Trustees contend that both estates are insolvent.  (*See id.*)

Further, the Trustees endorsed the following argument by Mocco's counsel at the September Hearing, *i.e.*, Licata has grossly overvalued the underlying properties, especially as to a certain 19-acre parcel of land, which is part of Liberty Harbor and which is alleged to be one of the JVA assets supposedly included within the Assets.  In particular, anyone seeking to acquire an interest in that parcel must first secure the approval of the Jersey City Development Agency, which has a joint interest in Liberty Harbor.  Moreover, that parcel is land-locked, contaminated, undeveloped, and will require tens of millions of dollars in site work, which is not scheduled to begin for another five-to-seven years.  (*See id.*)

## III. Discussion

The analysis begins with the relevant text of Rule 9019(a):  "On motion by the [Debtor] . . . the court may approve a compromise or settlement."  Recognizing the uniqueness of Rule 9019 in that it "does not have a parallel section in the Code," the Second Circuit has held that the rule "has a 'clear purpose . . . to prevent the making of concealed agreements which are unknown to creditors and un-evaluated by the court.'"  *Motorola, Inc. v. Official Comm. of Unsecured Creditors and JPMorgan Chase Bank, N.A. (In re Iredium Operating, LLC)*, 478 F.3d 452, 461 (2d Cir. 2007) (quoting *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)).

The Supreme Court has stated that a bankruptcy court must make an "informed and independent judgment as to whether a proposed compromise is fair and equitable"

---

On August 6, 2013, the Court entered the order approving the option and purchase agreement and authorizing the Trustees to sell the Assets to CB3.  (*See* ECF No. 2235, ("CB3 Sale Order").)  Significantly, the CB3 Order included various findings of fact, including a recitation of facts which led to the Trustees being the owners of the Assets.  (*Id.* at Part C, including ¶24.)  The CB3 Sale Order was not appealed.  While CB3 paid the option premium, it did not exercise its option to purchase the Assets because it could not secure the financing to do so.  (*See* Trustees' "Notice Regarding Option and Purchase Agreement", ECF No. 2281; *see also* Sept. 23, 2014 Audio file, ECF No. 2474.)  As a result, the Trustees continue to own the Assets.

after apprising itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Comm. of Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. at 414, at 424 1968); *see also In re Dewey & Leboeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012); *In re NW Investors II, LLC*, Case No. 06-CV-5078 (ADS), 2007 WL 2228151, *4 (E.D.N.Y. July 30, 2007). Courts "may not simply defer to a trustee's judgment, but must independently evaluate the reasonableness of the settlement." *In re McCoy*, 496 B.R. 678, Case No. 02-24159, 2011 WL 3501851, at *7 (Bankr. E.D.N.Y. Aug. 9, 2011) (citing *TMT Trailer Ferry*, 390 U.S. at 424; further citation omitted). To assist in this determination

> [c]ourts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in this Circuit have set forth factors for approval of settlements based on the original framework announced in [the Supreme Court's opinion in] *TMT Trailer Ferry*. Those interrelated factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Iridium*, 478 F.3d at 462 (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006), and citing *TMT Trailer Ferry,* 390 U.S. at 424; *In re Drexel Burnham Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)) (hereafter, "*Iridium* Factors"). When considering the *Iridium* Factors, "'[i]t is not necessary for the bankruptcy court to conduct a 'mini trial' on the issue.'" *Id.* (quoting *In re WorldCom*, 347 B.R. at 137)

(further citation omitted).  Rather, "[t]he court's responsibility is to 'canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (quoting *Newman v. Stein*, 464 F.689, 693 (2d Cir. 1972)); *see also Kayo v. Fitzgerald*, 91 Fed. App'x 714, 715 (2d Cir. 2004); *Hitzig, Handler, & Schwinning, P.C. v. Pereira*, 29 Fed. App'x 39, 42 (2d Cir. 2002).  "A decision to either accept or reject a compromise and settlement is within the sound discretion of the Court . . . ."  *Drexel Burnham*, 134 B.R. at 506 (citation omitted).

A.  *Licata's Objections*

"[A] Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, *only if there could be a surplus after all creditors' claims are paid*."  *Desormes v. Charlotte School of Law (In re Desormes)*, 497 B.R. 390, 395 (D. Conn. 2013) (further citations omitted) (emphasis added).  As noted, Licata, a chapter 7 debtor, is the only party who objected to the Amended 9019 Motion.  His attempt to establish a colorable basis for standing to object is unavailing.  To do so, he would have had to proffer evidence that after the sale of the Assets and payment in full to the holders of allowed unsecured claims, there would then be a surplus for him.  His only proffer to support that scenario was a real estate broker's opinion letter, which was both vague and of insignificant probative value.  Moreover, as Licata's counsel acknowledged, taking evidence on a Rule 9019 motion is not required.  *See In re SageCrest II, LLC*, No. 08-50475, 2010 WL 1981041, at *5, slip op. (Bankr. D. Conn. May 18, 2010), *aff'd* 2011 WL 134893 (D. Conn. Jan. 14, 2011).  Rather, the Court needs only to "'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness.'"  *WorldCom*, 347 B.R. at 137 (quoting *In re Teltronic Serv., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985)).

The record demonstrates that there are approximately $120 millions of unsecured claims.  There is nothing in the record to suggest that the sale of the Assets will generate enough money to satisfy those claims.  Those findings warrant the

conclusion that Licata has no pecuniary interest in these Cases and, therefore, no standing to object.

    B.  *The Amended 9019 Motion is Fair and Equitable*

    The Trustees have persuasively argued that the likelihood of their success in the NJ Ownership Dispute is greatly diminished because Judge Rothschild has indicated he will consider all the evidence introduced in the 1st CT Vermont Trial.  (*See* Sept. 23, 2014 Audio File, ECF No. 2474.)  The operative facts underlying Judge Brown's 1st CT Vermont Decision and, in particular, her conclusion that Licata was always Mocco's nominee and not the owner of properties in certain 1st CT LLCs, *see 1st CT Vermont Decision*, 2004 WL 1676211, at *15, and her finding that Mocco was more credible than Licata, *see id.* at *2, support the Trustees' assertion that the NJ Ownership Dispute is likely to be decided in favor of Mocco, and not the Trustees, for whom Licata was to be their primary witness.  This is especially so given that the 1st CT Vermont Decision was affirmed not only by the district court, *see In re First Connecticut Consulting Group, Inc.*, 340 B.R. 210 (D. Vt. 2006), but also by the Second Circuit, *see In re First Connecticut Consulting Group, Inc.,* 254 Fed. App'x 64 (2d Cir. 2007).

    Moreover, approval of this proposed settlement will eliminate the Trustees from complex and protracted litigation.  Further, no creditors, who are the only parties with the right to do so, have objected.  Finally, the Court is satisfied that this proposed settlement is the result of arm's-length negotiations between competent and experienced counsel.  Thus, having presided over this case for more than 12 years, as well as many related cases, and having considered the relevant *Iridium* Factors, the Court finds the proposed settlement falls within the range of reasonableness, and is fair and equitable.

## IV.  Conclusion

    Accordingly, IT IS ORDERED that the Trustees' Amended 9019 Motion is granted; and

IT IS FURTHER ORDERED that the instant settlement is between Mocco and the Trustees only.  That is, neither this Memorandum and Order, the Settlement Agreement, nor the settlement memorialized thereby, in any way releases, discharges, modifies, collaterally estops, binds, or otherwise impairs the rights of the Lenders and/or Chicago Title Insurance Company, including, without limitation, any and all claims, causes of action, defenses and counterclaims in the NJ Ownership Dispute, and this Memorandum and Order shall be without prejudice to the rights of the Lenders and/or Chicago Title Insurance Company in the NJ Ownership Dispute with all such rights preserved and reserved.

Dated this 9th day of October, 2014 in Bridgeport, Connecticut.

BY:

Alan H. W. Shiff
United States Bankruptcy Judge