UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

_____
In re:                              :
                                    :     CHAPTER 7
    FIRST CONNECTICUT               :
    CONSULTING GROUP, INC.,         :
                                    :     CASE No. 02-50852 (JJT)
         Debtor.                    :
_____ :

**RULING AND MEMORANDUM OF DECISION
<u>ON MOTION FOR 2004 EXAMINATIONS</u>**

Pending before the Court is James J. Licata's ("Licata") Motion, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, (the "Motion"), to examine under oath Richard Coan, Chapter 7 Trustee for First Connecticut Consulting Group, Inc., and Ronald Chorches, Chapter 7 Trustee for Licata's estate (collectively, the "Trustees"). Fifteen years into the tortured and labyrinthine administration of his Chapter 7 case, along with the procedurally-consolidated cases of companies sharing the name "First Connecticut", including First Connecticut Consulting Group, Inc., ("FCCG"), Licata seeks to dredge up old disputes in an effort to advance misleading and unsupportable claims of wrongful administration by the Trustees.

In his Motion, Licata claims that he is entitled to information regarding three interrelated issues stemming from Trustee Coan's settlement, under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement"), of disputed claims asserted by Licata and his business entities in prepetition litigation (the "New Jersey Litigation") against Licata's former business partner, Peter Mocco, and related entities (the "Mocco Parties"). Specifically, Licata proposes to examine the Trustees regarding: (a) whether Trustee Coan received payment of the $1.5 million Settlement Amount from the Mocco Parties; (b) Trustee Coan's "refusal to consummate" an

alleged agreement for the sale of estate assets, including the disputed claims, to Licata's favored buyer, an entity known as CB3; and, (c) the Trustees' alleged failure to prevent the Mocco Parties from encumbering the assets at issue in the New Jersey Litigation prior to surrendering any claims therein by way of the Settlement.

Rule 2004 states, in pertinent part, as follows:

(a) **Examination on motion.** On motion of any party in interest, the court may order the examination of any entity.

Fed. R. Bankr. P. 2004. The determination whether to grant relief lies within the sound discretion of the bankruptcy court. *Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*) 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014).

The party seeking Rule 2004 examinations bears the burden to show good cause for the discovery it seeks. *Id.*; *see also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (Rule 2004 affords the court "significant discretion."). "Generally good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)). In determining whether good cause exists, bankruptcy courts must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *see also In re SunEdison*, *Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) ("[Rule 2004's] spirit of proportionality is consistent with the historic concerns regarding the burden on the producing party and is relevant to the determination of cause."). While Chapter 7 trustees may properly be examined pursuant to Rule 2004, courts will "not condone the use of

Rule 2004 in a fashion which unduly harasses the [t]rustee or frivolously wastes the assets of the estate." *Matter of M4 Enterprises, Inc.*, 190 B.R. 471, 475 (Bankr. N.D. Ga. 1995).

According to the Trustees, Licata does not qualify as a "party in interest," and therefore may not invoke Rule 2004 to investigate circumstances surrounding the Settlement, because this Court (Shiff, J.), the United States District Court for the District of Connecticut, and the United States Court of Appeals for the Second Circuit, each held that Licata lacked standing to object to the Settlement, given that there was no reasonable prospect that Mr. Licata would receive a distribution from either the bankruptcy estate of FCCG or his individual Chapter 7 bankruptcy estate. *See In re First Connecticut Consulting Group, Inc.*, 2014 WL 5092269 (Bankr. D. Conn. Oct. 9, 2014); *Licata v. Coan*, 2015 WL 9699304 (D. Conn. Sept. 22, 2015); *In re Licata*, 659 Fed. Appx. 704 (2d Cir. 2016). In addition, the Trustees aver that they have already wasted tens of thousands of dollars responding to Licata's network of straw purchasers[1] and ever-expanding web of litigation, that the Settlement Amount was received by Trustee Coan, and that Licata already knows why CB3 failed to purchase the disputed assets—namely, because CB3 did not have sufficient funds, it failed to make deposits in accordance with court orders and filed for bankruptcy shortly after claiming that it was ready to close the multi-million-dollar transaction. *See In re CB3 Acquisitions*, *LLC*, 14-50524 (AWHS), ECF No. 121 (stipulated order admitting, *inter alia*, that on the Petition Date, the Debtor had: 1) "cash assets of less than $1,000 and no other property whatsoever"; and, 2) "no contract rights pursuant to any agreement(s) with the bankruptcy estates of First Connecticut Consulting Group, Inc. and/or James J. Licata, or with the trustees of those bankruptcy estates").[2]

---

[1] By Order dated October 9, 2014, the Court approved the Settlement, after entertaining CB3's failed – and apparently disingenuous – bid for the assets for approximately eight months.
[2] The Stipulated Order also barred CB3 from filing for bankruptcy for 100 years and precluded CB3 principals from ever consummating any transaction with FCCG.

Citing *M4 Enterprises*, Licata contends that the applicable party-in-interest standard is not limited to those with a pecuniary interest in a debtor, and, therefore, he may properly invoke Rule 2004 to examine the Trustees, just as the sole shareholder of the debtor in that Chapter 7 case was permitted to examine the trustee therein regarding a *proposed settlement* implicating estate assets. *See M4 Enterprises, Inc.*, 190 B.R. at 473-75.

Yet, even if the Court were to embrace the expansive construction of the party-in-interest standard adopted by *M4 Enterprises*, the facts at issue in that case bear little resemblance to those involved here. Perhaps most importantly, the settlement at issue in *M4 Entereprises* had not yet been consummated when the court authorized the debtor's sole shareholder's ("Mays") request to examine the trustee regarding the merits of the transaction. *Id.* at 473. Here, by contrast, the Settlement was approved by this Court nearly three years ago. In the interim, moreover, the bankruptcy court, the district court and the court of appeals, conclusively determined that Licata lacked standing to object to the Settlement, further attenuating any interest Licata allegedly possesses in determining why the Trustees made certain administrative decisions, which were ultimately approved by this Court. No such determination had divested the sole shareholder in *M4 Enterprises* of standing, and, in fact, the court therein noted that Mays advanced a colorable argument that he possessed subrogation rights of a large secured creditor of the debtor. *Id.* at 474, n. 3. Further, in *M4 Entereprises*, the bankruptcy court narrowed the Rule 2004 examination of the chapter 7 trustee primarily to valuation methodologies employed by the trustee, having deemed it "appropriate to closely limit that examination so as to avoid any harassment of the Trustee or unnecessary expense to the estate." *Id.* at 477.

To the extent that Licata's proposed topics of examination may easily be circumscribed, they have already been answered and therefore need not be repeated. To the extent that Licata

seeks to rehash the failure of CB3 to exercise its purchase option or the Trustees' alleged failure to prosecute the New Jersey Litigation in a manner befitting his oft-unwarranted zeal, the Court finds no utility in permitting such an inquiry. Moreover, such inquiry poses the obvious risk of harassing the Trustees, invading privilege, work-product and strategic thinking on vigorously litigated and concluded matters[3], and creating unnecessary expenses to both estates. All of these concerns carry additional weight in light of Licata's demonstrably misleading narrative regarding much of the relevant procedural history recounted in his Motion. Put simply, Licata has not met his burden to show good cause for the Rule 2004 examinations that he seeks.

Accordingly, the Motion is denied.

IT IS SO ORDERED at Hartford, Connecticut this 19th day of July 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[3] Indeed, both this Court and the district court considered and rejected Licata's alleged need to examine the Trustees, through an evidentiary hearing, in connection with the Court's approval of the Settlement. That Licata would, in essence, repackage and press the same improvident request again, years later, reaffirms this Court's determination that such an inquiry would be fruitless and improper.